OPINION
DROWOTA, Justice.
In this workers’ compensation action the Second Injury Fund, defendant-appellant, has appealed from a judgment of the Chancery Court of Knox County which found the employee, Robert Bomely, plaintiff-appellee, to be totally and permanently disabled. The award was apportioned 65 percent to the employer, Mid-America Corporation, d/b/a Burger King, defendant-appellee, and 35 percent to the Second Injury Fund under Tenn. Code Ann. § 50-6-208(b). The trial court assessed the employer’s liability based on 400 weeks of benefits and held the Second Injury Fund liable for the remaining 938 weeks of benefits (until the employee reached the age of 65[1]). Thus, the employer’s liability was limited to 65 percent of 400 weeks rather than 65 percent of the total number of weeks to age 65. We transferred this case from the Special Workers’ Compensation Appeals Panel to decide whether it was proper to have limited the employer’s liability in this fashion. After carefully examining the record before us and considering the relevant authorities, we conclude that the award should be apportioned between the employer and the Second Injury Fund based on the total number of weeks to age 65 rather than limiting the employer’s liability to a percentage of 400 weeks. Accordingly, that portion of the trial court’s judgment is reversed. We shall also address (1) whether an award of permanent total disability is subject to the monetary cap imposed by the 400 week maximum total benefit provision of Tenn.Code Ann. § 50-6-102(a)(6) and (2) whether the apportionment of benefits between the em *931 ployer and the Second Injury Fund in this case is controlled by subsection (a) or (b) of Tenn.Code Ann. § 50-6-208.

BACKGROUND

In 1998 and again in 1994, the employee, Robert Bomely, was working as an assistant manager for Burger King when he injured his neck and back in the course and scope of his employment. He had an extensive history of prior back and neck injuries, both work-related and nonwork-related. These include a noncompensable back injury in 1982; a work-related back injury in 1983 that resulted in a court approved settlement for 25 percent permanent disability to the body as a whole; a work-related back injury in 1988 for which a settlement was reached and approved by the court for 10 percent permanent disability to the body as a whole; and a noncompensable neck injury resulting from a car accident in 1989. Accordingly, the employee has received workers’ compensation awards totaling 35 percent permanent disability to the whole body prior to the 1993 and 1994 work-related back and neck injuries which precipitated this suit. The employee was able to return to work after each injury, but has not been able to return to work since his last injury in 1994.
Dr. William Kennedy, an orthopedic surgeon, testified that the employee sustained a 29 percent permanent anatomical impairment to his neck and a 26 percent permanent anatomical impairment to his back for a total of 47 percent impairment to the body as a whole. Dr. Kennedy attributed 33 percent of the total anatomical impairment of 47 percent to the 1993 and 1994 injuries, which equates to 15.6 percent. A psychiatrist testified the employee has permanent and severe depression related to his injuries which prevent him from being gainfully employed. A vocational disability expert concluded that the employee is totally and permanently vocationally disabled.
The trial court found the employee to be permanently and totally disabled, a finding that the parties do not contest on appeal. The court also found that only 20 percent of the employee’s permanent and total disability was attributable to the last injury. The court further determined that the employee was entitled to workers’ compensation benefits until he reached the age of 65 (he was 42 years old at the time of trial). See Tenn. Code Ann. § 50-6-207(4)(A)(i). The trial court then apportioned the award 65 percent to the employer and 35 percent to the Second Injury Fund pursuant to Tenn.Code Ann. § 50-6-208(b). The court assessed the employer’s liability based on 65 percent of 400 weeks of benefits for a total of 280 weeks (or $81,640) and held the Second Injury Fund liable for the remaining 938 weeks of benefits (or $294,532). The employer’s liability was thus limited to 65 percent of 400 weeks rather than 65 percent of the total number of weeks to age 65 (1,218 weeks).
The primary question on appeal is whether it was proper to have assessed the employer’s liability based on a percentage of 400 weeks.[2] A secondary but related issue is whether an award of permanent total disability is subject to the monetary cap imposed by the 400 week maximum total benefit provision of Tenn.Code Ann. § 50~6-102(a)(6). A final question is whether the apportionment of benefits between the employer and the Second Injury Fund in this case is controlled by subsection (a) or (b) of Tenn.Code Ann. § 50-6-208.
I.
The Second Injury Fund argues that the trial court erred by limiting the employer’s liability to 65 percent of 400 weeks. Citing Reagan v. American Policyholders' Ins., 842 S.W.2d 249 (Tenn.1992), the Fund contends that the employer’s liability should be calculated based upon the total amount of benefits awarded to age 65. According to *932 the Fund, the workers’ compensation law contains no indication that the legislature intended to limit an employer’s liability under Tenn.Code Ann. § 50-6-208 to 400 weeks. Rather, the legislature expressed its intent through the enactment of Tenn.Code Ann. § 50-6-207(4)(A)(i) in 1992 that employers can be held liable for benefits to age 65 if the employee is permanently and totally disabled.
In response, the employer argues that to hold it hable for more than 400 weeks of benefits would undermine the purpose of the Second Injury Fund to encourage employers to hire injured workers because employers will not risk having to pay benefits to age 65.
In Reagan v. American Policyholders' Ins., 842 S.W.2d 249 (Tenn.1992), the employee fell through a floor in the course and scope of his employment which left him totally and permanently disabled. He had previously settled a workers’ compensation claim for 15 percent permanent impairment to the body as a whole. Due to his low average weekly wage, the employee was entitled to an award of 550 weeks rather than the typical 400 weeks of benefits provided at that time for permanent total disability. The employer in Reagan argued that its liability was limited to 85 percent of 400 weeks and that the Second Injury Fund should be liable for the rest of the award. This Court rejected the employer’s argument and held that the apportionment should be based on the total amount of money awarded to the employee. Reagan, 842 S.W.2d at 251. We reasoned that apportioning the award in this manner was the only equitable thing to do. Id.
The employer in the case at bar argues that Reagan is “wholly unrelated to the issues in the present case” because it was decided before the 1992 change to the workers’ compensation law providing that a permanently and totally disabled worker is entitled to receive benefits until age 65. It is true that when Reagan was decided an award for permanent total disability was based on 400 weeks of benefits rather than the current payment of benefits until age 65. See Tenn.Code Ann. § 50-6-207(4)(A)(i). As such, Reagan does not address the apportionment of benefits until age 65.
Nonetheless, we are persuaded that the principle of equitable apportionment adopted in Reagan applies with equal force to the case at bar. It is not equitable to cap the employer’s liability at 400 weeks and require the Fund to pay the bulk of the award in light of the fact that Tenn.Code Ann. § 50-6-102(a)(6)(C) specifically exempts permanent total disability awards from the 400 week maximum total benefit limitation and Tenn. Code Ann. § 50-6-207(4)(A)(i) authorizes benefits to age 65 in cases of permanent and total disability. There is no indication in the workers’ compensation law that the legislature intended to limit an employer’s liability under Tenn.Code Ann. § 50-6-208 to 400 weeks. In fact, the legislature has expressed its intent through Tenn.Code Ann. § 50-6-207(4)(A)(i) that employers can be held hable for benefits to age 65 if an employee is totally and permanently disabled. If the legislature had wanted to cap an employer’s liability at 400 weeks where benefits are awarded to age 65 in cases involving the Second Injury Fund it could have easily done so.
Furthermore, we note here as we did in Reagan that the “objective of the legislation creating the Second Injury Fund is to limit the liability exposure of the employer by holding it responsible only for the employee’s first 100 percent of workers’ compensation disability, thereby encouraging the employment of injured workers.” Reagan, 842 S.W.2d at 250. “In other words, the employer is responsible for the employee’s first 100 percent of benefits and the Second Injury Fund is responsible for the rest.” Id. at 250-251. Under our holding today the employer’s exposure to liability is still limited to the first 100 percent of Bomely’s permanent total disability. If Bomely is able to rehabilitate himself and return to work and then gets injured again, the employer would pay nothing in benefits.
In sum, we are persuaded that the equitable division rationale that we adopted in Reagan should apply in this case. We find no statutory or equitable basis for using 400 weeks as the basis of apportionment under Tenn.Code Ann. §§ 50-6-208 and 50-6-207(4)(A)(i). In reaching this conclusion, we *933 are cognizant of the employer’s argument that if an employer’s liability is not limited to a percentage of 400 weeks, some employers might resist hiring young workers with disabilities in light of the legislation extending benefits to age 65 for permanent total disability. Whatever the merits of this argument, it should be addressed to the legislature since that body, not the courts, brought about the change in the law.
II.
An issue necessarily related to the apportionment question is what effect, if any, the maximum total benefit provision of Tenn. Code Ann. § 50-6-102(a)(6) has on awards of permanent total disability made under Tenn. Code Ann. § 50-6-207(4)(A)(i), which makes benefits payable to age 65. The question has considerable practical significance because limiting benefits to the maximum total benefit could substantially reduce the amount of compensation paid to the worker.
Tenn.Code Ann. § 50-6-207(4)(A)(i) provides that compensation for permanent total disability “shall be paid during the period of such permanent total disability[3] until the employee reaches the age of sixty-five_” Tenn.Code Ann. § 50-6-207(4)(B) provides that in cases of permanent total disability an employee is to be compensated as provided for in Tenn.Code Ann. § 50-6-207(4)(A) — to age 65 — “provided, that the total amount of compensation payable hereunder shall not exceed the maximum total benefit, exclusive of medical and hospital benefits.” At first glance, Tenn.Code Ann. § 50-6-207(4)(B) appears to place a monetary cap on awards of permanent total disability. However, this is not the case. The statutory definition of “maximum total benefit” in Tenn.Code Ann. § 50-6-102(a)(6) provides that “maximum total benefit means the sum of all weekly benefits to which a worker may be entitled.” The maximum total benefit for “injuries arising on or after July 1, 1992, shall be four hundred (400) weeks times the maximum weekly benefit except in instances of permanent total disability.” Tenn.Code Ann. § 50-6-102(a)(6)(C)(emphasis added).
Because the statutory definition of maximum total benefit exempts permanent total disability awards from the 400 week limitation, we conclude that such benefits are to be paid until age 65 under Tenn.Code Ann. § 50 — 6—207(4) (A) (i) without regard to the monetary cap imposed by the maximum total benefit provision of Tenn.Code Ann. § 50-6-102(a)(6). Although the 400 week limitation on benefits expressly applies in cases of temporary partial disability, see Tenn.Code Ann. § 50-6-207(2), and permanent partial disability, see Tenn.Code Ann. § 50-6-207(S)(F), the limitation does not apply to permanent total disability under Tenn.Code Ann. § 50-6-207(4). Had the legislature intended to limit permanent total disability awards to a maximum of 400 weeks, it could have drafted a provision explicitly doing so as it did for temporary partial and permanent partial disability. Our conclusion is further buttressed by Tenn.Code Ann. § 50 — 6—207(4)(A)(iii), which says that “[ajttorneys’ fees in contested cases of permanent total disability shall be calculated upon the first four hundred (400) weeks of disability only.” If the legislature had intended to limit permanent total disability benefits to 400 weeks of compensation under Tenn.Code Ann. § 50-6-102(a)(6), it would not have been necessary to provide that attorney’s fees be calculated only upon the first 400 weeks of compensation.
In sum, we hold that awards of permanent total disability are payable to age 65 under Tenn.Code Ann. § 50-6-207(4)(A)(i) and are not subject to the monetary cap imposed by the 400 week maximum total benefit provision of Tenn.Code Ann. § 50-6-102(a)(6). Our holding on this point is a reasonable construction of statutory language which avoids statutory conflict and provides for the harmonious operation of the laws in question.[4] See Cronin v. Howe, 906 S.W.2d 910, *934 912 (Tenn.1995). We farther find that when liability is apportioned to the Second Injury Fund, payments by the Fund do not begin until “after completion of the payments” by the employer. Tenn.Code Ann. § 50-6-208(a)(1). See also Perry v. Sentry Ins. Co., 938 S.W.2d 404, 408 (Tenn.1996).
III.
Finally, we must address the employer’s argument that the trial court should have apportioned the award between it and the Second Injury Fund under Tenn.Code Ann. § 50-6-208(a)[5] rather than under Tenn.Code Ann. § 50-6-208(b).[6] The basis for the employer’s argument is that subsection (a) and subsection (b) of Tenn.Code Ann. § 50-6-208 are mutually exclusive.
After this case was tried and the employer filed its brief in this Court in which it contended that subsection (a) and subsection (b) of Tenn.Code Ann. § 50-6-208 are mutually exclusive, this Court decided Perry v. Sentry Ins. Co., 938 S.W.2d 404 (Tenn.1996). In Perry, we noted (and reiterate here) that the Second Injury Fund is liable under subsection (a) if (1) the employee has previously sustained a permanent physical disability from any cause or origin, either compensable or noncompensable, and (2) the employee becomes permanently and totally disabled as the result of a subsequent compensable injury.[7] Id. at 407. See also Sweeten, 938 S.W.2d at 385. In such a case, the employer pays only for the disability that results from the subsequent injury that rendered the employee permanently and totally disabled, without consideration of any prior injuries. Tenn.Code Ann. § 50-6-208(a)(l). In other words, an employer under subsection (a) is responsible only for that disability that would have resulted from the subsequent injury had the earlier injury or injuries not existed. Perry v. Sentry Ins. Co., 938 S.W.2d 404 (Tenn.1996); Cameron v. Kite Painting Co., 860 S.W.2d 41 (Tenn.1993); Allkins v. Thomas Furniture Co., 762 S.W.2d 557 (Tenn. 1988); see also Minton v. State Industries, Inc., 825 S.W.2d 73, 76-77 (Tenn.1992). Accordingly, it is important for trial courts to make an explicit finding of fact regarding the extent of vocational disability attributable to the subsequent or last injury, without consideration of any prior injuries. This the trial judge did in this case, making a finding of 20 percent vocational disability attributable to the last injury.
We further indicated in Perry (and again reiterate here) that an employee will also have met the requirements for recovery under subsection (b) if the employee has re *935 ceived or will receive workers’ compensation awards, including the last one, for permanent disability to the whole body which exceed 100 percent when combined. Perry, 938 S.W.2d at 407. See also Sweeten, 938 S.W.2d at 385; Henson v. City of Lawrenceburg, 851 S.W.2d 809, 812 (Tenn.1993). When this occurs, the Second Injury Fund pays benefits due the worker in excess of 100 percent after all compensable awards, including the last one, are combined. Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483 (Tenn.1997); Huddleston v. Hartford Acc. & Indem. Co., 858 S.W.2d 315 (Tenn.1993); Fink v. Caudle, 856 S.W.2d 952 (Tenn.1993); Henson v. City of Lawrenceburg, 851 S.W.2d 809 (Tenn.1993); Reagan v. American Policyholders' Ins., 842 S.W.2d 249 (Tenn.1992); Cox v. Martin Marietta Energy Systems, 832 S.W.2d 534 (Tenn. 1992); Hale v. CNA Ins. Companies, 799 S.W.2d 659 (Tenn.1990); Sims v. Bituminous Cas. Corp., 798 S.W.2d 751 (Tenn.1990); Burris v. Cross Mountain Coal Co., 798 S.W.2d 746 (Tenn.1990); Sitz v. Goodyear Truck Tire Ctr., 762 S.W.2d 886 (Tenn.1988). We thus concluded in Perry that an injured worker may meet the criteria under both subsection (a) and subsection (b) of Tenn. Code Ann. § 50-6-208. Perry, 938 S.W.2d at 407 (“[Sjection (a) and (b) are not mutually exclusive, and an employee may meet the criteria for recovery under both sections.”).[8] Thus, Perry resolves the argument of the employer in the instant case that subsections (a) and (b) are mutually exclusive. We would add, however, that when the facts satisfy the requirements of both subsections, courts should apply the one which produces a result more favorable to the employer since the goal of the Second Injury Fund statute is to encourage the hiring of injured workers by limiting employer liability. See Reagan, 842 S.W.2d at 250; Burris, 798 S.W.2d at 749.
As indicated above, the trial court in this case apportioned the award 65 percent to the employer and 35 percent to the Second Injury Fund pursuant to Tenn.Code Ann. § 50-6-208(b). The trial court as an alternative finding determined that under subsection (a) Bomely had sustained a 20 percent permanent disability as a result of the 1994 injury. Accordingly, under subsection (a), the trial court found that the employer would have been responsible for 20 percent of the award and the Second Injury Fund responsible for the remaining 80 percent of the award. The trial court concluded, however, that it was bound to apply subsection (b) because the employee had prior awards of benefits. At the time the trial court decided the case it did not have the benefit of this Court’s decision in Perry.
The facts in this case, as we found in Perry, satisfy only the requirements of section (a). The employee has not met the requirements of section (b) of having received awards for permanent disability which equal or exceed 100 percent. The employee had received prior workers’ compensation awards totaling 35 percent permanent disability to the whole body prior to the last work-related injury in 1994. He was found to have sustained a 20 percent permanent disability as a result of the 1994 injury. As in Perry, the combined awards (55 percent) do not equal or exceed 100 percent.
The trial court did, however, correctly recognize that the facts of this case satisfy the requirements of subsection (a). The employee had sustained prior injuries which caused permanent disability and he subsequently became permanently and totally disabled as a result of the 1994 compensable injury. As explained above, the employer would pay only for the disability that resulted from the last injury which rendered the employee totally and permanently disabled without consideration of any prior injuries, which the trial court correctly found to be 20 percent. The evidence does not preponderate against this finding. Tenn.Code Ann. § 50-6-225(e)(2) (1997 Supp.). The Second Injury Fund would be responsible for the remaining 80 percent of the award. The Fund will begin to discharge its liability after the employer has paid its portion of the award.
For the foregoing reasons, the judgment of the trial court is affirmed in part and re *936 versed in part and the case remanded so that the trial court can rule on a motion filed by the employee to hold the employer in contempt for failing to pay his medical expenses. Costs on appeal are taxed to the defendant-appellee.
ANDERSON, C.J., and REID and BIRCH, JJ., concur.
HOLDER, J., with separate concurring and dissenting opinion.

. See Tenn.Code Ann. § 50-6-207(4)(A)(i)(pro-viding that compensation for permanent total disability "shall be paid during the period of such permanent total disability until the employee reaches the age of 65-”).

. A similar question was presented in Sweeten v. Trade Envelopes, Inc., 938 S.W.2d 383 (Tenn. 1996). In Sweeten, the employer settled with a permanently and totally disabled employee for 75 percent based upon 400 weeks, and then at trial the Second Injury Fund was held liable for the remaining benefits to age 65. This Court did not reach the issue, however, because we set aside the settlement. Thus, while Sweeten and the case at bar present the same scenario involving the Fund being held responsible for all benefits beyond 400 weeks, the present case is the first time this Court has squarely addressed the issue.

.An employee is considered totally disabled when an injury "totally incapacitates the employee from working at an occupation which brings such employee an income_” Tenn.Code Ann. § 50-6-207(4)(B).

. In Love v. American Olean Tile Company, 970 S.W.2d 440 (Tenn.1998), a companion case to the one at bar, the Special Workers’ Compensation Appeals Panel held that awards of permanent total disability are subject to the maximum total benefit provision of Tenn.Code Ann. § 50- *934 6-102(a)(6). Judge Joe C. Loser, Jr., speaking for the Special Workers' Compensation Appeals panel in Love, is of the view that permanent total benefits are payable to age 65, but may not exceed the maximum total benefit. This view is based on the belief that the legislature did not intend to financially burden the Second Injury Fund and perhaps result in the employee’s social security disability benefits being reduced. See 42 U.S.C. § 424(a). As our opinions in the present case and in Love demonstrate, we do not agree with the Panel’s holding in Love, but we do recognize that our resolution of these cases will result in the Second Injury Fund paying larger monetary awards. Once again, however, these are arguments that should be addressed to the legislature since that body, not the courts, brought about the change in the law.

.Subsection (a)(1) of Tenn.Code Ann. § 50-6-208 provides in pertinent part: “If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee’s employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled....”

. Subsection(b)(l)(A) of Tenn.Code Ann. § 50-6-208 provides: "In cases where the injured employee has received or will receive a workers’ compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.”

. Subsection (a), unlike subsection (b), also requires the employer to have had actual knowledge of the employee’s prior permanent physical disability prior to the subsequent injury. Burris v. Cross Mountain Coal Co., 798 S.W.2d 746, 748 (Tenn.1990).

. In Hale v. CNA Ins. Companies, 799 S.W.2d 659 (Tenn.1990), subsection (a) was not pursued because the record failed to reflect "knowledge” on the part of the employer of the 1972 injury. Therefore, we applied subsection (b).