IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

January 11, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| LINDA S. SEALS, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | FILED: JANUARY 11, 1999 |
| v. | ) | |
| | ) | |
| ENGLAND/CORSAIR UPHOLSTERY | ) | CLAIBORNE COUNTY |
| MANUFACTURING COMPANY, INC., | ) | |
| | ) | |
| Defendant/Appellant, | ) | HON. BILLY JOE WHITE, JUDGE |
| | ) | |
| DINA TOBIN, DIRECTOR OF | ) | |
| THE DIVISION OF WORKERS' | ) | NO. 03-S-01-9704-CH-00044 |
| COMPENSATION, TENNESSEE | ) | |
| DEPARTMENT OF LABOR, | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

For Appellee Seals:                    For Appellant:

DAVID H. DUNAWAY                    J. STEVEN COLLINS
LaFollette, TN                          JOHN A. WILLIS
                                       Knoxville, TN

For Appellee Second Injury Fund:

JOHN KNOX WALKUP
Attorney General and Reporter

SANDRA E. KEITH
Assistant Attorney General
Nashville, TN

O P I N I O N

JUDGMENT OF TRIAL COURT AFFIRMED
AS MODIFIED AND REMANDED                              BIRCH, J.

In this workers' compensation action, the employee, Linda S. Seals, filed two separate claims: one for a March 1993 back injury and a second for a July 1993 hand injury and chronic depression. Although not formally consolidated by the trial court, these claims were tried together. Regarding the first claim, the trial court awarded the employee benefits for a 25 percent permanent partial disability to the body as a whole as a result of the back injury. Regarding the second claim, the trial court found that the employee was permanently and totally disabled from the combination of the back injury, the hand injury, and resulting chronic depression. No distinct rating was provided for the hand injury alone. Pursuant to Tenn. Code Ann. § 50-6-208(b) (Supp. 1997), the trial court apportioned the permanent total disability award 75 percent to the employer, England/Corsair Upholstery Manufacturing Company, Inc., and 25 percent to the Second Injury Fund.

This Court consolidated the employee's two claims for review. The Special Workers' Compensation Appeals Panel, upon reference for findings of fact and conclusions of law pursuant to Tenn. Code Ann. § 50-6-225(e) (Supp. 1997), found that the evidence preponderated against the trial court's findings of permanent psychiatric injury and permanent total disability. The panel found instead that the employee sustained permanent partial disabilities of 12.5 percent as a result of the back injury and 40 percent as a result of the subsequent hand injury. In addition, the panel disallowed certain discretionary costs awarded by the trial court.

We granted the employee's motion for full-court review. For the reasons stated below, we find that the evidence does not

2

preponderate against the trial court's findings. We remand the case, however, for further proceedings on the apportionment of liability between the employer and the Second Injury Fund in accordance with this Court's decision in <u>Bomely v. Mid-America Corp.</u>, 970 S.W.2d 929 (Tenn. 1998). We affirm, as modified, the trial court's order relating to the discretionary costs.

I

The employee is forty-eight years old and began working for the employer in 1985. She sustained a work-related back injury on March 7, 1993, but she was able to return to work on March 26, 1993, to a less strenuous position. She sustained another work-related injury to her left hand and wrist on July 27, 1993, and she underwent surgery for this injury on November 19, 1993. When she returned to work on January 4, 1994, she was assigned to answer the telephone, to file, and to perform minimal data entry tasks in the office. Her status was changed to part-time on May 1, 1995, and she subsequently resigned from her job on September 18, 1995. She filed suit for workers' compensation benefits for all of her injuries. At trial, she testified that she resigned due to constant pain in her back and left arm.

In the fall of 1995, the employee sought treatment for depression at Cherokee Health Systems. She ended this treatment after two or three visits, however, because she did not like her doctor. The employee had not received any other treatment for depression as of the time of the December 1996 trial.

Two orthopedic surgeons testified regarding the extent of the employee's physical impairment. The treating physician, Harold E. Cates, M.D., testified that the employee's back injury resulted in a 5 percent permanent impairment with a ten-pound lifting restriction. He also testified that her hand/wrist injury resulted in a 10 percent permanent impairment,[1] yielding a combined rating for both injuries of a 15 percent permanent impairment. The evaluating physician, William E. Kennedy, M.D., testified that the employee sustained a 4 percent permanent impairment to the body as a whole as a result of her 1993 back injury. He did not rate the impairment, if any, that the employee sustained from the hand/wrist injury.

Regarding the employee's depression, two psychiatrists testified concerning the permanency of her impairment. The first, Jerry B. Lemler, M.D., testified on behalf of the employee. Lemler testified that during his evaluation of the employee on December 4, 1995, he concluded that she was suffering from major depression, single episode with psychotic features, caused by her back and hand/wrist injuries. Due to the untreated nature of her mental illness, Lemler testified that the employee's depression was becoming chronic and would therefore not respond effectively to anti-depressant medications. Furthermore, he testified that it was unlikely that the employee would be able to engage in any meaningful introspective psychotherapy due to her limited intellectual ability. Finally, he testified that she would be unable to concentrate sufficiently on an assigned work task for eight hours each day. Thus, Lemler opined that the employee

---

[1]Cates rated the employee's hand/wrist injury as a 16 percent permanent impairment to her arm which translates to a 10 percent permanent impairment to the body as a whole.

4

suffered a 50 percent permanent impairment due to chronic depression.

The second psychiatrist, Bruce Quinton Green, M.D., evaluated the employee's mental impairment on behalf of the employer. Green testified by deposition that psychological testing and his personal examination of the employee resulted in his conclusion that she is suffering from a major depressive episode from which she "absolutely should recover" with appropriate medical and rehabilitative treatment.[2] Green elaborated that there is a very high statistical likelihood that the employee's depression is not permanent.

Finally, three experts testified in regard to the employee's vocational capacity. Kelly Lenz, a physical therapist, testified in reference to a "functional capacity evaluation" report she prepared on the employee. Lenz's report states that her findings, when coupled with the lifting restrictions imposed by Cates, meant that the employee would be most suitable for sedentary work, defined as occasional lifting of ten pounds or less, no frequent lifting, and no significant walking or carrying.

Norman Hankins, Ed.D., also testified as a vocational expert. Hankins determined that the employee's reading, spelling, and arithmetic skills are at a grade-school level and that her IQ is in the "borderline" range. Thus, he opined that even without

---

[2]Green's testimony supports Lemler's conclusion that the employee's depression resulted in large part from her work-related physical injuries.

5

the depression, the employee is 100 percent vocationally disabled based on her physical and educational limitations.[3]

The last vocational expert, Ed Smith, testified on behalf of the employer. Smith determined that the employee has transferable skills in the areas of customer service, clerical, telephonic, cashier, and reception. While he opined that the employee is not totally disabled, Smith agreed with Lenz that the employee is restricted to sedentary employment.

The trial court concluded that the employee was permanently and totally disabled as a result of her physical and mental injuries. The back injury and resulting depression were rated as a 25 percent permanent partial disability to the body as a whole,[4] and the employer was ordered to pay benefits on this basis. No distinct rating was given, however, to the hand/wrist injury and consequential worsening of the employee's depression which resulted in her total disability. The trial court awarded permanent total disability benefits to be paid until the employee reaches age sixty-five.[5] As noted previously, the trial court

[3]Hankins mistakenly believed that Cates had placed a two-pound lifting restriction on both of the employee's arms, when in fact, the orthopedist gave a two-pound restriction to the left arm and a ten-pound restriction to the right arm. When asked how his assessment would be altered by the ten-pound restriction, Hankins admitted that there would be "a few" sedentary jobs that the employee could perform.

[4]The trial court based this disability rating upon a finding that the employee had a 5 percent medical impairment due to the back injury and a 5 percent medical impairment due to the depression. Using the 2.5 statutory multiplier, the trial court found a 25 percent permanent partial disability.

[5]In its brief, the employer argued that the trial court erred in awarding more than the statutory maximum of 400 weeks of benefits. We recently decided this issue in Bomely wherein we held that benefits for permanent total disability are not subject to the 400 week cap. Bomely, 970 S.W.2d at 932. Thus, the trial court did not err.

apportioned the permanent total disability benefits 75 percent to the employer and 25 percent to the Second Injury Fund.  The trial court also granted the employee's motion for discretionary costs.

## II

In <u>Collins v. Howmet Corp.</u>, 970 S.W.2d 941, 943 (Tenn. 1998), we summarized the standard of review and other legal principles that apply to the pending case:

> In workers' compensation cases, the standard of review in this Court on issues of fact is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise.  Tenn. Code Ann. § 50-6-225(e)(2); <u>Spencer v. Towson Moving and Storage Inc.</u>, 922 S.W.2d 508, 509 (Tenn. 1996).  When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. <u>Humphrey v. David Witherspoon, Inc.</u>, 734 S.W.2d 315, 315 (Tenn. 1987).

In reviewing the evidence, we are mindful that the permanency of a work-related injury must first be established by competent medical evidence.  <u>Harness v. CNA Ins. Co.</u>, 814 S.W.2d 733, 734 (Tenn. 1991).  Once permanency is established, the trial court may evaluate the factual question of the extent of vocational disability.  <u>See</u> <u>Collins v. Howmet Corp.</u>, 970 S.W.2d at 943.  In determining vocational disability, the trial court may consider a myriad of factors, including such factor as the employee's education.  <u>See</u> Tenn. Code Ann. § 50-6-241(a)(1) (Supp. 1997) (listing the factors to be considered).

7

In this case, the trial court heard the testimony discussed above as well as the testimony of the employee and that of a representative of the employer. From our independent, *de novo* review of this evidence, we recognize that the trial court faced a close question as to the extent and permanency of the employee's disabilities. However, in light of the presumption of correctness given to the trial court's findings and the deference due on issues of credibility and weight to be given to oral testimony, we conclude that the evidence does not preponderate against the findings of the trial court. We thus affirm the findings regarding the extent of the employee's injuries and the permanent total disabled condition that now exists due to her depression.

III

The employer first argues that the trial court abused its discretion by not granting the employer's motion to consolidate the employee's two workers' compensation claims. Essentially, the employer maintains that if the claims had been consolidated, the employee would only have been entitled to one award of benefits for permanent total disability; thus, no separate award of benefits for the March 1993 back injury would have been appropriate.

We cannot agree. Although the employee was ultimately permanently and totally disabled as a result of constant pain and chronic depression from the combination of her injuries, she did in fact suffer two distinct injuries occurring more than four months apart. The employer knew that she had suffered the March 1993 back injury when the employer permitted her to return to a less strenuous job later that same month. Under these circumstances,

8

the employee is entitled to separate disability awards for both of her injuries.

Furthermore, the employer received the benefits of consolidation in the case under submission. Trial courts are encouraged to consolidate actions involving a common question of law or fact in order to avoid unnecessary expense and duplication of effort. See Tenn. R. Civ. P. 42.01 & advisory commission comments. In this case, although the trial court did not formally consolidate the two workers' compensation claims, it did permit these claims to be tried in one proceeding. Thus, the trial court did not abuse its discretion in failing to consolidate the two cases.

IV

Because the employee suffered multiple injuries and is now permanently and totally disabled as a result of chronic depression, it was necessary for the trial court to apportion the award for permanent total disability between the employer and the Second Injury Fund pursuant to Tenn. Code Ann. § 50-6-208. We recently addressed apportionment in Bomely. Although our decision in Bomely was released after the trial court's and the panel's respective decisions in this case, the apportionment in this case must conform to Bomely because this case was pending at the time Bomely was decided.

As we stated in Bomely, in order to decide whether a given case is covered by Tenn. Code Ann. § 50-6-208(a)[6] or § 50-6-

---

[6]Subsection (a)(1) provides: "If an employee has previously sustained a permanent physical disability from any cause or origin

9

208(b),[7] "it is important for trial courts to make an explicit finding of fact regarding the extent of vocational disability attributable to the subsequent or last injury, <u>without consideration of any prior injuries</u>."  <u>Bomely</u>, 970 S.W.2d at 934 (emphasis added).  The trial court in this case may not have been aware of the importance of making an explicit finding as to the extent of vocational disability attributable solely to the employee's last injury (the hand/wrist injury and resulting depression).  Because there is no such explicit finding, and because the parties have not had an opportunity to brief this issue, we decline to address the apportionment of liability between the employer and the Second Injury Fund.  Instead, we remand this case to the trial court for further proceedings consistent with <u>Bomely</u> and its companion case, <u>Love v. American Olean Tile Co.</u>, 970 S.W.2d 440 (Tenn. 1998).

V

---

and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the 'second injury fund' therein created."

[7]Subsection (b)(1) provides, in pertinent part:  "(A)  In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards. (B)  Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund."

The employer asserts that the trial court erred in awarding discretionary costs for Lemler's deposition and for Lenz's testimony at trial. The award of discretionary costs is governed by Tenn. R. Civ. P. 54.04(2). This rule authorizes the trial court to award costs for reasonable and necessary court reporter expenses and expert witness fees for depositions or trials. The award of such costs is a discretionary matter with the trial court. Lock v. National Union Fire Ins. Co., 809 S.W.2d 483, 490 (Tenn. 1991).

In this case, Lemler gave two depositions: a discovery deposition taken by the employer's attorney and a "deposition for proof" taken by the employee's attorney. The employer argues that it should not be required to pay for the "deposition for proof" because Lemler testified at trial.

Under the particular facts of this case, we agree with the employer. The employee's decision to have Lemler testify in person at trial made the "deposition for proof" unnecessary. Thus, the trial court abused its discretion by taxing the employer with the costs attributable to that deposition.

The employer also argues that it should not be liable for Lenz's expert witness fee because the employer offered to stipulate to the authenticity of Lenz's report. However, the employer's offer to stipulate did not come until the day of trial. By that time, Lenz was already present and ready to testify, and she was precluded from being elsewhere. We thus find that the trial court did not abuse its discretion in awarding Lenz's expert witness fee as a discretionary cost under Tenn. R. Civ. P. 54.04.

11

We affirm the trial court's judgment as to the existence, compensability, and extent of the employee's back, hand/wrist, and psychological injuries with resulting permanent total disability. We affirm, also, as modified, the trial court's award of discretionary costs. However, we remand this case to the trial court for further proceedings to clarify the apportionment of liability between the employer and the Second Injury Fund in light of <u>Bomely</u> and <u>Love</u>.

The costs are taxed to the defendant-employer for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Drowota, Barker, JJ.

CONCURRING SEPARATELY:
Holder, J.