# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 2, 2001 Session

## MATTIE L. SCALES v. CITY OF OAK RIDGE, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. 98LA0282 & 99LA0035   James B. Scott, Jr., Judge**

---

**No. E2000-00499-WCM-CV - Filed August 23, 2001**

---

This workers' compensation case presents several questions involving the calculation of an employee's benefits award and its apportionment between her employer and the Second Injury Fund, including a question involving the social security offset provision of Tennessee Code Annotated 50-6-207(4)(A)(i).  The judgments of the trial court and the Special Workers' Compensation Appeals Panel involve numerous findings and holdings, discussed in detail below.  After considering both judgments, and the applicable statutes and case law, we hold that:  the employee sustained two separate injuries, each of which is separately compensable; the first injury, to her arms, is not subject to the 260 week cap in section 207(4)(A)(i) because it is an injury to a scheduled member; neither of the two awards is subject to the social security offset provision; the Second Injury Fund is responsible for 65% of 260 weeks of benefits for the permanent total disability award after the employer fully satisfies its obligation of 35% of that award; and the employer is responsible for the full amount of benefits relating to the employee's first injury.  The effect of these holdings is to affirm in part and reverse in part the decision of the Panel.

**Appeal pursuant to Tenn. Code Ann. § 50-6-225(e); Judgment of the**
**Special Workers' Compensation Appeals Panel Affirmed in Part;**
**Reversed in Part; Case Remanded to the Circuit Court**

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ.,  joined.  E. RILEY ANDERSON, C.J., not participating.

John T. Batson, Jr., Knoxville, Tennessee, for the appellants, The City of Oak Ridge, The City of Oak Ridge Board of Education, and TML Risk Management Pool.

Roger L. Ridenour, Clinton, Tennessee, for the appellee, Mattie L. Scales.

Paul G. Summers, Attorney General and Reporter, E. Blaine Sprouse, Assistant Attorney General, Nashville, Tennessee, for the appellee, Second Injury Fund.

**OPINION**

## I. Background

The employee, Mattie L. Scales ("Scales"), who was seventy-two years old at the time of trial, had worked in the food service department of the City of Oak Ridge school system ("Oak Ridge") for forty-seven years. In early 1997, Scales developed pain and numbness in her hands and arms. She sought medical treatment and was diagnosed with carpal tunnel syndrome in both her hands, for which she required surgery. In January 1998, she returned to work. On April 14, while on the job, she tripped and fell, causing injury to her back. She sought treatment for this injury but was not able to return to work again. She received retirement benefits from the Tennessee Consolidated Retirement System in the amount of $962 per month. She did not apply for Social Security benefits, but instead drew such benefits from her deceased husband's account in the amount of $832 per month, which she believed was greater than what she would be eligible to receive in her own right.

Because of these injuries, Scales brought an action for workers' compensation benefits in the trial court. She filed two separate suits, one for the injury to her arms, the other for the injury to her back. The court consolidated these cases for one trial. After hearing medical evidence about Scales's injuries, the court awarded her 75% permanent partial disability to each arm; this equals 150 weeks of benefits per arm, i.e., 300 weeks.[1] Regarding Scales's back injury, the court awarded her an additional permanent partial disability of 35% to the body as a whole. The court also determined that the combination of these two injuries rendered her totally and permanently disabled. Thus, the court found that Scales was entitled to "permanent total disability" benefits, and since she was over 60 years old when injured, these benefits were capped at 260 weeks. See Tenn. Code Ann. § 50-6-207(4)(A)(i). The total weeks of benefits awarded, therefore, was 560 (300 permanent partial for the first injury, plus 260 permanent total for the second injury). Finally, the court apportioned 25% of the permanent total disability award to Oak Ridge and 75% to the Second Injury Fund.

Oak Ridge (along with the Oak Ridge Board of Education and the Board's insurance carrier, TML Risk Management Pool) appealed the trial court's ruling to the Supreme Court. The case was referred to the Special Workers' Compensation Appeals Panel. See Tenn. Code Ann. § 50-6-225(e)(3). The Panel considered and decided several issues. First, it rejected Oak Ridge's argument that Scales only sustained one injury; rather, the Panel affirmed the trial court's finding that she had sustained two separate injuries, each of which is separately compensable. Second, the Panel rejected Oak Ridge's argument that the permanent partial disability award (75% to each arm; 300 weeks) is

---

[1] The trial court made two awards, one for the loss of each arm. The Workers' Compensation Law, however, specifically provides scheduled benefits for the loss of two arms, which means that only one award is required. Tenn. Code Ann. § 50-6-207(3)(A)(ii)(w); see, e.g., Thomas v. Murray, Inc., No. W2000-01280-WC-R3-CV, 2001 WL 640241 (Tenn. Sp. Workers Comp. June 5, 2001); Smith v. Sentry Ins. Co., No. W1999-02148-WC-R3-CV, 2000 WL 1425115 (Tenn. Sp. Workers Comp. June 28, 2000). While the court's mistake does not affect the number of weeks of benefits, we wish to point out that trial courts in the future need only make one award.

subject to the 260 week cap; rather, it held that the cap does not apply to "scheduled members" such as arms, based on <u>McIlvain v. Russell Stover Candies, Inc.</u>, 996 S.W.2d 179 (Tenn. 1999). Third, the Panel accepted part of Oak Ridge's argument that the trial court should have reduced Scales's award by the amount of social security benefits she drew from her deceased husband's account; it agreed with Oak Ridge that an offset was required, but held that the offset only applied to the permanent total disability award (for Scales's second injury, to her back). Finally, the Panel found that it could not determine the exact apportionment of Scales's award between Oak Ridge and the Second Injury Fund, since there was no evidence in the record as to how the award of 75% disability to each arm would convert into a percentage of disability to the body as a whole. Without such evidence, the Panel concluded it could not determine which subsection of Tennessee Code Annotated 50-6-208 – subsection (a) or subsection (b) – applied, and so it could not apportion liability correctly under <u>Bomely v. Mid-America Corp.</u>, 970 S.W.2d 929 (Tenn. 1998). On this last issue, the Panel remanded the case to the trial court.

### II.  Our Findings of Fact and Conclusions of Law

Both Scales and Oak Ridge sought further review in this Court and we granted their motions. As discussed later in this opinion, we affirm the Panel's first two findings:  Scales did suffer two separate injuries, each of which is separately compensable; further, the injury to her arms, which are scheduled members, is not subject to the 260 week cap. As to the third, we reverse the Panel's holding that a social security offset is required against the permanent total disability award; the trial court correctly determined that no offset is required for either the permanent partial or permanent total award. We also conclude – and all the parties in this case agree – that a remand is unnecessary. Under the "number of weeks" conversion method, explained below, we find that 300 weeks of benefits for Scales's injury to her arms is equivalent to 75% permanent partial disability to the body as a whole. Added to the subsequent injury with a 35% disability, relating to her back injury, Scales's award exceeds 100% permanent and total disability, thereby implicating both subsection (a) and subsection (b). Under <u>Bomely</u>, we find that subsection (a) controls. Therefore, the Second Injury Fund is liable for 65% of benefits for Scales's second injury (which, under the statutory cap, is 260 weeks) after Oak Ridge satisfies its obligation of 35%. Finally, we hold that Oak Ridge is liable for the full amount of benefits relating to Scales's first injury to her arms.

### III.  Analysis

Appellate review of factual findings in a worker's compensation case is de novo upon the record of the trial court with a presumption that the court's findings are correct. Tenn. Code. Ann. § 50-6-225(e)(2). Questions of law, however, are reviewed de novo, without a presumption of correctness. <u>Smith v. U.S. Pipe & Foundry Co.</u>, 14 S.W.3d 739, 742 (Tenn. 2000); <u>Nutt v. Champion Int'l Corp.</u>, 980 S.W.2d 365, 367 (Tenn. 1998).

Initially, we note that the Panel's first two findings are clearly supported by recent decisions of this Court and may therefore be disposed of without lengthy discussion. First, it is clear that Scales suffered two separate injuries, one to her arms and the other, over a year later, to her back. In <u>Seals v. England/Corsair Upholstery Mfg.</u>, 984 S.W.2d 912, 916 (Tenn. 1999), the Court held that

a workers' compensation claimant who suffered two distinct injuries, and was ultimately determined to be permanently and totally disabled, was entitled to separate disability awards for both her injuries. The same is true for Scales. The fact that these two injuries became part of the same suit, after the trial court consolidated Scales's separately filed complaints, is irrelevant. Second, in McIlvain, the Court held that the 260 week cap set forth in Tennessee Code Annotated section 50-6-207(4)(A)(i) "applies to workers over age 60 who suffer injuries to the body as a whole, whether permanent partial or permanent total, *but not to such workers who suffer scheduled member injuries*." 996 S.W.2d at 185 (emphasis added). Scales's first injury, which occurred when she was over 60 years old, was to both her arms, which are scheduled members. Thus, under McIlvain, this first injury is not subject to the 260 week cap. Her second injury, to her back, is subject to that cap. See id.; Vogel v. Wells Fargo Guard Serv., 937 S.W.2d 856, 862 (Tenn. 1996).

Scales's second injury, which resulted in a combined award exceeding 100% permanent disability, raises two further issues that require some discussion: the application of the social security offset provision and the apportionment of Scales's overall award between Oak Ridge and the Second Injury Fund.

### A. Social Security Offset

The statutory provision governing the availability of an offset for social security benefits is Tennessee Code Annotated section 50-6-207(4)(A)(i). Referring to permanent total disability benefits, the statute provides that "[s]uch compensation payments shall be reduced by the amount of any old age insurance benefit payments attributable to employer contributions which the employee may receive under the Social Security Act . . . ." Oak Ridge argues that nothing in this statute makes it ineligible to receive the benefit of the offset provision; therefore, the total amount of benefits it owes to Scales must be reduced by the amount of social security benefits she receives. Although it is undisputed that Scales does not receive any such benefits in her own name, the record reveals she did not seek her own benefits because she believed her deceased husband's benefits were more generous. Since she is still enjoying the benefits of social security payments, Oak Ridge argues, the offset provision should apply.

The Panel agreed in part with Oak Ridge's argument, stating: "We do not accept the argument the offset should not be allowed against the total disability award because the social security benefits were attributable to the employee's husband's account and based on his earnings." The Panel then quoted language from section 207(4)(A)(i), which it deemed "broad" in scope, as follows: "any . . . . benefit . . . . which the employee may receive . . . ." Therefore, the Panel modified the trial court's judgment refusing to allow an offset. It did not reverse the trial court outright, however, in recognition of two recent social security offset cases, namely, McCoy v. T.T.C. Illinois, Inc., 14 S.W.2d 734, 737 (Tenn. 2000), where we held that the offset applies to all workers over age 60 who suffer injuries to the body as a whole, whether permanent partial or permanent total disability injuries, and U.S. Pipe & Foundry Co., 14 S.W.3d at 743, where we held that the offset does not apply to awards for injuries to scheduled members. Believing that McCoy and U.S. Pipe

& Foundry Co. may have some bearing on the ultimate allocation of Scales's award between Oak Ridge and the Second Injury Fund, the Panel remanded the case for further consideration.

Before this Court, Oak Ridge offers two statutory construction arguments in support of its position, in addition to the Panel's analysis. First, "the reduction is mandatory because the legislature used the word 'shall'" in section 207(4)(A)(i) ("[s]uch compensation payments shall be reduced"), and second, the "employee is not required to actually be receiving old-age insurance benefits under the Social Security Act but must merely be eligible to receive such benefits . . . ." because the legislature used the words "which the employee *may* receive" instead of "is receiving."

We do not think that either the Panel's or Oak Ridge's construction of the statute is correct. While the Panel's quotation of section 207(4)(A)(i) – "any . . . . benefit . . . . which the employee may receive . . . ." – appears to call for the application of the offset provision, this quotation leaves out an important phrase. As quoted above, the entire portion of the statute provides that "such compensation shall be reduced by the amount of any old age insurance benefits payments *attributable to employer contributions* which the employee may receive . . . ." Tenn. Code Ann. § 50-6-207(4)(A)(i) (emphasis added). It is undisputed that Scales's social security benefits were drawn from her deceased husband's account, which means that she did not receive any benefit "attributable to employer contributions." As to Oak Ridge's emphasis on the word "shall" in the statute, we find that this simply begs the question: the compensation award shall be reduced, but only when the offset provision properly applies. As to the emphasis on "may receive," as opposed to "is receiving," it is clear that Scales is, in fact, receiving social security benefits. The issue before us concerns the relevance of the fact that Scales's benefits are drawn from her husband's account, rather than her own, given that, according to the record, Scales had to choose one account versus the other, and she chose her husband's. Thus, we need not confront the question whether the offset applies when the employee is eligible to receive social security benefits from any source, but for whatever reason does not apply for them. Here, Scales has chosen to seek benefits, but those benefits are not "attributable to employer contributions," as the statute requires.

Apart from the statutory construction arguments, Oak Ridge contends that on policy grounds the offset provision should apply: first, Oak Ridge – which paid half of Scales's social security taxes for many years – should not be prevented from enjoying the benefits of the offset provision merely because Scales chose to draw more generous benefits from another source; second, the offset provision is designed to prevent the duplication of benefits for lost income, a purpose that will be thwarted by today's holding. This Court, however, cannot ignore the express language of section 207(4)(A)(i), which requires that offsetting benefits be "attributable to employer contributions." As we recently stated, "[a] basic rule of statutory construction is that the legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." Bryant v. Genco Stamping & Mfg. Co, 33 S.W.3d 761, 765 (Tenn. 2000); see also Mooney v. Sneed, 30 S.W.3d 304, 307 (Tenn. 2000) (stating that courts must "presume that the legislature says in a statute what it means and means in a statute what it says there") (quoting BellSouth Telecomm., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

Our reading of the statute leads to the conclusion that, insofar as Oak Ridge is concerned, the offset provision does not apply to either of Scales's awards, for the Panel correctly held that after U.S. Pipe & Foundry Co. the offset provision could only be relevant to Scales's second injury to her back (her first injury was to a scheduled member). Accordingly, there is no need for a remand on this issue.

It remains to be considered whether the offset provision applies to the Second Injury Fund, which, as we explain below, is responsible for a percentage of Scales's award. We note that in its brief the Second Injury Fund simply states without elaboration or argument that the Panel correctly held that the offset provision applies. It is unclear whether this indicates that the Fund believes its position is incontestable or that it can adduce no persuasive argument in its favor. We think, however, that the very language emphasized above – "attributable to employer contributions" – leads to the conclusion that the offset does not apply to the Second Injury Fund, for the Fund is obviously not the same as or equivalent to an "employer." The Fund, rather, is a statutorily-created vehicle for compensating workers who have sustained a "[s]ubsequent permanent injury after sustaining previous permanent injury," Tenn. Code Ann. § 50-6-208, the purpose of which is "to limit the liability exposure of the employer by holding it responsible only for the employee's first 100 percent of workers' compensation disability, thereby encouraging the employment of injured workers." Bomely, 970 S.W.2d at 932 (quoting Reagan v. American Policyholders' Ins. Co., 842 S.W.2d 249, 250 (Tenn. 1992)); see also Henson v. City of Lawrenceburg, 851 S.W.2d 809, 813 (Tenn. 1993). It is clear that whether the offset applies to the Second Injury Fund's portion of the employee's award has no bearing on whether the statutory goal of "encouraging the employment of injured workers" will be advanced, for however this question is resolved the employer must pay the same amount. While nothing prevents the legislature from determining that the offset should apply to the Second Injury Fund, perhaps in furtherance of the anti-duplication principle mentioned above, the statute as currently written provides that the offset applies only to "payments attributable to employer contributions."

We therefore reverse this part of the Panel's decision and hold that the social security offset provision does not apply to the Second Injury Fund. The exact apportionment of the compensation award between Oak Ridge and the Second Injury Fund may now be determined.

**B. Apportionment**

Scales sustained two permanent injuries resulting in awards which exceed 100% when combined. We must therefore determine whether the Second Injury Fund is liable for some portion of her overall compensation award, and, if so, the proper apportionment of that award between the Fund and Oak Ridge. The Second Injury Fund's liability is governed by Tennessee Code Annotated section 50-6-208 according to the procedure outlined in Bomely. See 970 S.W.2d at 934-35; see also Hill v. CNA Ins. Co., 985 S.W.2d 959, 961-62 (Tenn. 1999) (following Bomely). Based on an earlier case, Perry v. Sentry Ins. Co., 938 S.W.2d 404 (Tenn. 1996), we noted in Bomely that the Second Injury Fund is liable under section 208(a) if (1) the employee has previously sustained a permanent physical disability from any cause or origin, either compensable or noncompensable, and (2) the employee becomes permanently and totally disabled as the result of a subsequent injury.

Explaining this statutory language, we stated: "In such a case, the employer pays only for the disability that results from the subsequent injury that rendered the employee permanently and totally disabled, without consideration of any prior injuries. In other words, an employer under subsection (a) is responsible only for that disability that would have resulted from the subsequent injury had the earlier injury or injuries not existed." 970 S.W.2d at 934 (internal citation omitted). Also following Perry, we indicated that an "employee will also have met the requirements for recovery under [section 208(b)] if the employee has received or will receive workers' compensation awards, including the last one, for permanent disability to the whole body which exceed 100 percent when combined." Id. at 934-35 (citations omitted). "When this occurs, the Second Injury Fund pays benefits due the worker in excess of 100 percent after all compensable awards, including the last one, are combined." Id. at 935 (citations omitted). Finally, we restated our previous holding that an injured worker may meet the criteria under both subsection (a) and subsection (b). Id. (citing Perry, 938 S.W.2d at 407) ("[S]ection (a) and (b) are not mutually exclusive, and an employee may meet the criteria for recovery under both sections."). Resolving the issue of how to apportion liability when both subsections apply, we held that "when the facts satisfy the requirements of both subsections, courts should apply the one which produces a result more favorable to the employer since the goal of the Second Injury Fund statute is to encourage the hiring of injured workers by limiting employer liability." Id.

The Panel attempted to apply Bomely but concluded that, because of an incomplete record, it was impossible to determine which subsection would be most favorable to the employer. First, it held that a calculation under subsection (a) was possible: the trial court found that Scales had become permanently and totally disabled because of her subsequent injury, which resulted in a vocational disability rating of 35% to the body as a whole; thus, Oak Ridge is liable for 35% of the total disability award and the Second Injury Fund is liable for the balance. The Panel, however, determined that it could not perform the calculation under subsection (b), because the trial court failed to convert the 75% disability finding – which related to Scales's first injury, to her arms – into a percentage of disability for the body as a whole. While the Panel believed such a conversion was possible, based on the American Medical Association (AMA) Guidelines, the trial court had simply failed to make the necessary findings. Without those findings it could not be determined whether Scales's award exceeds 100%, the prerequisite for applying subsection (b), and, accordingly, which subsection is most favorable to Oak Ridge. The Panel therefore remanded the case to the trial court on this issue.

Although the parties differ in their ultimate apportionment calculations, they agree that the Panel erred in ordering a remand; they argue that the Court has all the information it needs to convert the scheduled member disability award of 75% to a body as a whole award, thereby allowing for a calculation under subsection (b). Despite some differences in elaboration, the parties' arguments on how this conversion should proceed generally conform to the Second Injury Fund's analysis. In brief, the Fund advocates a "number of weeks" conversion method, rather than a reliance on the AMA Guidelines. As it notes, however, the case law is not clear on this question.

In Henson, the Court stated that the legislature's intention was to equate a prior scheduled member award to a percentage of the body as a whole under the AMA Guidelines. 851 S.W.2d at 813. In Perry, however, the Court explained – without discussing Henson – the "number of weeks" conversion method that had been used by the Panel. 938 S.W.2d at 406. The Panel in Perry held that the Second Injury Fund was liable for only 12.5% of the employee's permanent total disability award, a conclusion it reached by converting an award of 25% permanent disability to the leg, a scheduled member, to an award of 12.5% disability to the body as a whole. Explaining this method, the Court stated: "The leg is a scheduled member having a maximum value of 200 weeks of benefits. The body as a whole is valued at 400 weeks, or twice the value of a leg. Thus, an award based on a 25 percent disability to the leg equates to one based on 12.5 percent disability to the body as a whole." Id. at n.1. (internal citations omitted). This is the Second Injury Fund's recommended approach.

The Fund acknowledges that Perry is not controlling authority but argues that the method of conversion Perry describes should be adopted on policy grounds. The Fund reasons that the AMA Guidelines address impairment ratings, not vocational disability ratings; thus, the effect of using the Guidelines would be to convert a scheduled member disability to a physical, medical impairment rating, when the very purpose of conversion is to translate a scheduled member disability value into a whole body disability value. The "number of weeks" conversion method, on the other hand, accomplishes the desired task in a straightforward, uniform way. Scales and Oak Ridge agree with this argument. After considering it fully, so do we.

We may now follow Bomely to determine the calculation under section 208(a) and (b), and then to determine which subsection is more favorable to Oak Ridge. As to Scales's first injury, the trial court found she has sustained 75% permanent partial disability to each arm. Based on the value of 200 weeks of benefits for injury to a scheduled member, see Tenn. Code Ann. § 50-6-207(3)(A)(m), this equates to 150 weeks (75% of 200), which, in turn, equates to 300 weeks, since Scales injured both her arms. Under the method outlined above, we must calculate the value of this 300 week figure in terms of an award to the body as a whole. The body as a whole is valued at 400 weeks. Tenn. Code Ann. § 50-6-207(3)(F); Perry, 938 S.W.2d at 406 n.1. The result of the calculation is 75% (300 is 75% of 400). In sum, as a result of her first injury, Scales sustained 75% permanent partial disability to the body as a whole. As to her second injury (to her back), the trial court found that she sustained an additional 35% permanent partial disability to the body as a whole. Adding the two awards, she sustained 110% permanent disability to the body as a whole.

The Second Injury Fund and Oak Ridge agree with the analysis up to this point. They also agree that subsection (a) is more favorable to Oak Ridge. Under subsection (a), Oak Ridge is liable for 35% of Scales's award – the amount of vocational disability she sustained as a result of her second injury – and the Second Injury Fund is liable for the remaining 65%. Under subsection (b), Oak Ridge would be liable for 90% of Scales's award, for the Second Injury Fund would be liable only for the amount exceeding 100% permanent disability, in this case 10%. But although the parties agree with this percentage allocation they disagree on the other essential part of the calculus, namely, how many weeks of benefits are at issue. This disputed question may be framed as follows: "35%

of what amount of benefits"? The Second Injury Fund argues that the answer is clearly 260 weeks – the statutory cap applying to employees over 60 years old who sustain permanent total disability injuries, see Tenn. Code Ann. § 50-6-207(4)(A)(i) – for this figure corresponds to Scales's award for her second injury to her back. As for Scales's first injury to her arms, resulting in 300 weeks of benefits, the Fund argues that Oak Ridge is responsible for the entire amount.

Oak Ridge disagrees. Its argument is based on statutory language from subsection (a), discussed above, which states in part that an "employee shall be entitled to compensation from the employee's employer . . . . only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered . . . ." Tenn. Code Ann. § 50-6-208(a)(1). Thus, it is responsible for 35% of the second injury and no percentage of the first. Under this reading of the statute, Oak Ridge argues, it must pay only 140 weeks of benefits, for that number equals 35% of 400, the value of permanent partial disability to the body as a whole. See Tenn. Code Ann. § 50-6-207(3)(F). The Second Injury Fund is liable for the remainder of Scales's total award of 560 weeks, which amounts to 420 weeks.

We agree with the Second Injury Fund's reasoning. It is true, as Oak Ridge argues, that the text of section 208(a)(1) states that the employee is only entitled to compensation from the employer for the second injury, not the previous injury. But this statement appears in a subsection of a statutory provision that is entirely devoted to the question of how liability should be apportioned for *subsequent* permanent injury. Section 208, in other words, is the Second Injury Fund statute, and nothing else. It does not purport to eclipse all the other provisions in the Workers' Compensation Act that govern injuries for which the Second Injury Fund is not implicated. The procedural posture of this case underscores why this is so. Scales filed two separate workers' compensation suits, one for each injury. In the normal course of proceedings, she would have received one award for her first injury, which occurred in early 1997, and then a separate award for her second injury, which occurred in April of 1998. The reason this outcome did not arise is simply that the trial court, for reasons of judicial efficiency, consolidated Scales's two cases. Oak Ridge never compensated Scales for her initial injury, as would normally occur, because the trial court ruled on both injuries in the same case. We see no reason to hold that simply because of the trial court's consolidation order Oak Ridge is absolved from paying benefits for Scales's first injury. Indeed, we have made this clear in a recent case. See Seals, 948 S.W.2d at 916 (rejecting a "case consolidation" argument similar to Oak Ridge's).

We therefore hold that the Second Injury Fund's apportionment argument is correct: Oak Ridge must pay 35% of 260 weeks for Scales's second injury; the Second Injury Fund must pay the balance of 65% for that injury;[2] and Oak Ridge must pay for all of Scales's first injury, which

_____

[2] To avoid confusion, it should be noted that basing the 35%-65% calculation on 260 weeks rather than 400 weeks does not conflict with our recent decision in Peace v. Easy Trucking Co., 38 S.W.3d 526 (Tenn. 2001). In Peace we held that permanent partial disability awards for employees over age 60 must be calculated as a percentage of 400 weeks, with total benefits capped at 260 weeks, rather than as a percentage of 260 weeks. That case, of course, concerned the total amount of benefits to which an employee was entitled, a number that changed depending upon the

(continued...)

amounts to 300 weeks. The effect of this decision is to reverse in part the decision of the Panel, which remanded to the trial court after holding that it had insufficient information with which to make a judgment concerning apportionment.

## IV. Conclusion

We hold that Scales suffered two separate injuries, each of which is compensable. We also hold that the social security offset provision of Tennessee Code Annotated section 50-6-207(4)(A)(i) does not apply in this case. Finally, regarding the apportionment of liability, we hold that (1) Tennessee Code Annotated section 50-6-208(a) controls the apportionment of Scales's award for her second injury to her back, and that under this section the Second Injury Fund is liable for 65% of 260 weeks of benefits after Oak Ridge fully satisfies its obligation of 35% of 260 weeks; and (2) Oak Ridge is liable for all of Scales's first injury. The case is remanded to the Circuit Court for Anderson County for entry of an order consistent with these holdings.

FRANK F. DROWOTA, III, JUSTICE

---

[2](…continued)
approach taken (i.e., X% of 400 is greater than X% of 260). See Peace, 38 S.W.3d at 530 n.5. Here, we are concerned with apportionment, not Scales's overall award: she will receive 260 weeks for her second injury regardless of what percentages are allocated to Oak Ridge and the Second Injury Fund. To calculate Oak Ridge's share as a percentage of 400 and then subtract that number from 260 to arrive at the Second Injury Fund's share would change the 35%-65% split. No statutory provision or underlying policy calls for such a confusing result.