**Judith R. SELLERS**

v.

**Gary T. SELLERS.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

July 20, 2006 Session.

Sept. 7, 2006.

Permission to Appeal Denied by Supreme Court Jan. 29, 2007.

Selma Cash Paty, Chattanooga, Tennessee, for the appellant, Judith R. Sellers.

William H. Horton, Chattanooga, Tennessee, for the appellee, Gary T. Sellers.

**OPINION**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

When the parties were divorced in 2000, Mrs. Sellers was not awarded any alimony, but was awarded $900 per month from Mr. Sellers's military retirement benefits as a division of marital property. Mr. Sellers made the payments directly to Mrs. Sellers, and later, the payments were made to her by the Department of Defense. Subsequently, Mr. Sellers's military disability benefits were increased, and his retirement benefits were decreased, which resulted in Mrs. Sellers's monthly payment from the Department of Defense being lowered from $900 to $90. Mrs. Sellers filed a contempt petition, alleging that Mr. Sellers had modified his retirement benefit

program in an attempt to defraud her of alimony and requesting that Mr. Sellers be ordered to pay back alimony payments. The trial court granted Mrs. Sellers a judgment for unpaid alimony and attorney's fees and directed that Mr. Sellers make future alimony payments directly to her. The trial court later vacated this order and set a hearing on Mrs. Sellers's petition for contempt. Upon rehearing, the trial court denied Mrs. Sellers's petition for contempt and declared its prior order holding Mr. Sellers in contempt to be null and void. Mrs. Sellers appeals, arguing that the trial court erred in setting aside its order granting her petition for contempt and in failing to award her alimony in an amount to compensate for the diminishment in the monthly payments she had received from Mr. Sellers's retirement benefits. We hold that the trial court did not err in setting aside its order of contempt because the order had no basis in law or fact. Because Mr. Sellers was never under an obligation to pay Mrs. Sellers alimony, he cannot be liable for an alimony arrearage or held in contempt of court for nonpayment. Further, because Mrs. Sellers was not awarded any alimony in the divorce decree, the trial court had no authority to subsequently modify the decree to award alimony. We affirm the decision of the trial court.

## I. Background

For twenty years of the parties' thirty-seven year marriage, Gary T. Sellers ("Husband") served in the United States Navy, and upon his retirement for medical reasons in 1987, he began receiving retirement payments from the Department of Defense and disability payments from the Department of Veterans Affairs ("VA"). When the parties were divorced in December of 2000, Husband was receiving retirement benefits of $1,800 per month and disability benefits of $460 per month. The trial court did not award Judith R. Sellers

("Wife") any alimony, but determined that Husband's retirement benefits were marital property and included the following provision in the divorce decree:

> The Court, having found that [Wife] was married to [Husband] for more than twenty (20) years, during which time [Husband] was in the United States military, [Wife] is hereby awarded ... $900.00 ... per month from [Husband's] retirement benefits with the United States Navy, effective December 1, 2000. Husband shall make a payment of ... $900.00 ... per month directly to [Wife] on or before the 10th day of each and every month, until such time as this FINAL DECREE becomes final and the appropriate action can be taken to permit the Department of Defense to begin enforcement of the division of [Husband's] retired pay, as provided herein. The Court finds that it has jurisdiction over [Husband] for purposes of dividing his retired pay due to the fact that [Husband] has filed pleadings in this cause and has consented to the jurisdiction of the Court.

This provision was authorized under the Uniformed Services Former Spouses' Protection Act ("USFSPA"), codified at 10 U.S.C. § 1408, *et seq.* In enacting the USFSPA, Congress provided twofold relief to an ex-spouse of a member of the military. "First, it permitted state courts to treat a military retiree's 'disposable retired pay' as community property and to divide it among both ex-spouses. Second, it provided a mechanism by which the military retiree's ex-spouse could receive payment of his or her ordered allocation of the 'disposable retired pay' directly from the military." *Johnson v. Johnson,* 37 S.W.3d 892, 893 (Tenn.2001).

After the divorce and until May of 2001, Husband paid Wife the monthly pay-

ments. In May of 2001, the Department of Defense began making the payments to Wife. In the spring of 2003, Husband was required to undergo a medical evaluation by the VA. Based upon this examination, the VA increased Husband's disability payments. Because the increase in Husband's disability payments resulted in a commensurate decrease in Husband's monthly retirement benefits, beginning in July of 2003, Wife's payment went from $900 per month to approximately $90 per month. Husband's disability benefits were not available to Wife because federal law prohibits the division of disability benefits as marital property in a divorce proceeding. *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

After the reduction of benefits awarded her in the divorce decree, Wife filed a petition for contempt against Husband charging that he "went to the Navy Department and had the provisions for his pension changed so that the benefits [Husband] received were labeled 'disability benefits' and paid by the Veteran's Administration" and that "[f]or [Husband] to have his benefit program modified in an attempt to defraud [Wife] her alimony is unconscionable." Among other things, the petition requested that Husband be directed "to pay the back alimony payments to [Wife], i.e. $810.00 per month from and after July 1, 2003," and that he "be required to make directly to [Wife] the payments of $900.00 per month from and after the date of the entry of an order pursuant to this petition."

Husband did not attend the hearing on Wife's petition for contempt. Thereafter, on June 11, 2004, the trial court entered an order *nunc pro tunc* to April 19, 2004, granting Wife a judgment against Husband in the amount of $9,790 for "unpaid alimony" and $5,000 for attorney's fees.

The order further directed the United States Government "to correct the inappropriate lack of payment to the petitioner out of [Husband's] retirement funds by paying to [Wife] the sum of $900.00 per month ... from this point forward in payment of the continuing obligation on the part of [Husband] to pay alimony" and that "[Husband] shall promptly make all future $900.00 per month alimony payments to [Wife] unless that payment is made [b]y the Government." Finally, the order provided that "until such time as [Husband] fully pays to [Wife] [the $9,790 'unpaid alimony' and the $5,000 attorney's fees] and reinstates (and makes) the continuing payment of all future alimony, he be incarcerated in Tennessee and/or extradited from for [sic] the State of Georgia [1] pursuant to the Uniform Interstate Families Support Act until such time as the judgments are paid in full."

Husband was arrested upon authority of this order in July of 2005 in Alabama and incarcerated for one week. Husband was released from jail after the trial court was contacted by an Alabama judge who questioned the propriety of the trial court's order granting the contempt petition, noting that the trial court had failed to set bond and that under federal law, Husband could not have personally changed the amount of retirement funds being paid to Wife. On July 21, 2005, the trial court *sua sponte* entered an order setting aside its order of June 11, 2004; releasing Husband from jail; and resetting the hearing on the contempt petition to September 13, 2005. Thereafter, Husband filed his answer to the petition for contempt and a motion for a judgment of dismissal upon the pleadings.

The contempt petition and motion for dismissal were heard on September 13,

---

1. The record shows that Husband was residing in Georgia at the time of this order.

2005. Over a month after the hearing, Wife filed a motion to amend her petition to include a request for alimony retroactive to the date of the divorce. On November 16, 2005, the trial court entered its final order in the case, which included the following:

> After hearing testimony upon the record, it appears to the Court that the crux of the Petition is contempt for alleged nonpayment of alimony. However, the Final Divorce Decree in question simply awarded the Petitioner, Judith Sellers, as property division, the amount of $900 per month, (or an amount not to exceed fifty percent (50%) of the disposable military retirement of the Respondent, Gary Sellers).
>
> It further appears to the Court that Mr. Sellers was receiving both a military retirement and disability prior to the entry of the Final Divorce Decree, that any waivers or other documents that he signed with respect to any reduction of military retirement, based on any increase in disability, [were] signed and executed before the Final Divorce Decree dated December 11, 2000, and, that after entry of the Final Divorce Decree, the Respondent was ordered to undergo a physical examination. Upon completion of that physical examination, his disability was increased by the Veterans Administration pursuant to applicable law, which resulted in a decrease in the military benefit which, in turn, reduced the retirement benefit to both parties, including Judith Sellers.
>
> The Court does not find that the Respondent, Gary Sellers, took any action on his part to unilaterally alter those benefits, and is not in contempt for failing to pay alimony, which was the basis of the Petition for Contempt.
>
> WHEREFORE, it is hereby

ORDERED that the Petition for Contempt and Modification be denied, that any prior orders finding Mr. Sellers in contempt or awarding any arrearage or attorney fees, are hereby decreed as null and void.

Wife now appeals this order.

## II. Issues

The following issues, as restated, are presented for our review in this case:

1) Did the trial court err in setting aside the order of June 11, 2004, awarding Wife a judgment for unpaid alimony and attorney's fees and ordering Husband incarcerated until the judgments were paid in full?

2) Did the trial court err in failing to award Wife alimony?

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn.1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

## IV. Order Vacated

The first issue presented for our review is whether the trial court erred in

setting aside its June 11, 2004, order of contempt. Wife contends that this order became final thirty days after its entry because Husband did not file a motion pursuant to Tenn. R. Civ. P. 59.01 or 59.04, and the trial court did not take any action to vacate the order until over thirty days after its entry. Wife asserts that although Tenn. R. Civ. P. 60.02 provides that, upon motion, the court may relieve a party from a final judgment for various reasons, including "mistake, inadvertence, surprise or excusable neglect," Husband did not file a Rule 60.02 motion, and Husband did not meet the required burden of proving that he was entitled to have the order of June 11, 2004, set aside. Wife also notes that Rule 60.02 demands that a motion to set aside a judgment for mistake or inadvertence be filed "not more than one year after the judgment ... was entered," and it is apparent that no such motion was filed within that period of time, nor did the trial court act *sua sponte* to set aside the order within that period of time. Wife concludes that the trial court was without legal authority to vacate its prior order, that such action was an abuse of discretion, and that the order of June 11, 2004, should be reinstated. We disagree.

The trial court did not err in setting aside its order of contempt because the order had no basis in fact or law. Wife's petition for contempt asserted that Husband had his retirement benefit program modified in an attempt to defraud Wife of her "alimony" and requested that Husband be ordered to "pay the back alimony payments." The order of June 11, 2004, granted the petition and, *inter alia*, erroneously found that the decree of divorce awarded Wife "alimony" in the amount of $900 per month, that Husband was indebted to Wife in the amount of $9,790 "for past due alimony," and indicated that Husband "fails to pay any current or future alimony payments" in the amount decreed.

Consequently, the order provided that Wife have and recover a judgment in the amount of $9,790 for unpaid alimony and that Husband make all future $900.00 per month alimony payments to Wife. Husband's retirement benefits were changed unilaterally by the Department of Defense. There is no indication that Husband procured this change. Husband was never under any obligation to pay alimony to Wife. It necessarily follows then that the trial court had no authority to hold Husband in contempt for not paying alimony and no authority to award Wife a judgment for unpaid alimony and attorney's fees.

■ The trial court had no authority to order Husband to pay alimony in the future. It is the rule in Tennessee that if a divorce decree does not award alimony, alimony may not be awarded later, unless a later right to alimony is afforded by statute. *Davenport v. Davenport,* 178 Tenn. 517, 160 S.W.2d 406 (Tenn.1942) ("[T]he obligation of the husband to the wife is extinguished by a decree of divorce without provision for alimony."); *Robinette v. Robinette,* 726 S.W.2d 524, 525 (Tenn.Ct. App.1986) (absent statutory authority to the contrary, "where a decree of absolute divorce is final and the decree does not award alimony, the spouse may not be awarded alimony at any subsequent time"); and *Noble v. Stubblefield,* 755 S.W.2d 454, 458 (Tenn.Ct.App.1988) ("The right to alimony was actually waived and lost by failure to provide for it in the [divorce] decree."). *See also,* 24 Am.Jur.2d *Divorce and Separation* § 795 (2006). Wife does not contend that there was statutory authority for her to be paid alimony post-decree, and we find no such authority. Thus, when the trial court entered its order decreeing that Husband pay past, current, and future alimony, the court acted in derogation of the common law of this state.

While it is true that Husband filed no motion for relief under Rule 60.02, the Tennessee Supreme Court has indicated that when facts and circumstances present a necessity for relief under Rule 60.02(1), the trial court may act *sua sponte*. *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn.1976). We see no reason that the trial court may not likewise grant *sua sponte* relief under Rule 60.02(5), as did the court in the present matter. Although the trial court did not cite Rule 60.02 as authority for setting aside the order of June 11, 2004, it is our determination that the trial court's actions are supported by the Rule, which "acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn.1990). It was entirely appropriate on equitable grounds that the trial court vacate its prior order which required that Husband pay alimony despite a final divorce decree to the contrary and which further provided that Husband be incarcerated for failing to make such payments. Finally, it is our determination that the trial court acted within a reasonable time under the circumstances, and Wife presents no argument to the contrary. Accordingly, the trial court did not err in setting aside the order of June 11, 2004.

### V.  *Request for Alimony*

■ Next, Wife argues that the trial court erred in failing to allow her motion to amend her petition for contempt to request alimony and in failing to award her alimony to replace the award of payments relative to Husband's retirement benefits.

As we have noted, over a month after the hearing, Wife belatedly filed a motion to amend her contempt petition to include a request for alimony. Specifically, this motion requested that Wife be allowed to amend the petition "so as to make a request for alimony from the Husband in the amount of $900.00 per month from and after the time the Court originally awarded $900.00 per month payment to the plaintiff at the time of the entry of the original Order in this cause, as modified by the actions of the Government thereafter." There is no indication in the record that the trial court addressed this motion in its final judgment or otherwise. In her appellate brief, Wife states that "[s]ince the Trial Judge made no mention of the Motion to Amend when he entered the Final Order on November 16, 2005 the Trial Judge implicitly either did not allow the amendment or, if he did allow it, denied [the request for alimony]." Wife argues that the trial court was required to allow her amendment by Tenn. R. App. 15.01, which provides that "a party may amend the party's pleadings ... by leave of court; and leave shall be freely given when justice so requires." Wife presents no argument that the trial court erred in failing to grant her request for alimony, if in fact the court did allow her amendment.

As we stated in our analysis of the preceding issue, when a final divorce decree does not award alimony, alimony may not be awarded thereafter. Therefore, if the trial court did grant Wife's motion to amend to request alimony and then denied the request, its decision was proper and supported by the authority previously cited. If, on the other hand, the trial court failed to allow Wife to amend her petition to request alimony, such failure, if error, was harmless.

### VI.  *Conclusion*

In summary, we do not find that the trial court erred in dismissing Wife's petition for contempt or in failing to grant her request for alimony. The pleadings and

the order appealed from in this case dealt solely with the issue of whether Husband should have been held in contempt for failure to pay alimony—not the issue of Wife not receiving her share of Husband's retirement benefits. It appears to us that Wife's primary problem was that she was not receiving the retirement benefits she was awarded in the divorce. However, we are precluded from addressing obligations of Husband with regard to payments related to the division of marital property since the trial court made no ruling as to such obligations. Our decision in this case would not, of course, prohibit Wife from filing a separate petition for a judgment against Husband for monies due her pursuant to the divorce decree's division of marital property.

We affirm the judgment of the trial court. All costs of appeal are taxed against the appellant, Judith R. Sellers.