IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 7, 2006


# ROBERT W. BIBLE, D/B/A CHALET VILLAGE CHALETS
# v. TED MULLIKIN, ET AL.


**Appeal from the Circuit Court for Sevier County**
**No. 2001-119-III     Rex Henry Ogle, Jr., Judge**

_____


**No. E2005-2064-COA-R3-CV -  FILED MARCH 26, 2007**

_____


Robert W. Bible d/b/a Chalet Village Chalets ("Plaintiff") sued Ted Mullikin and Ted Mullikin d/b/a Mountain Rentals of Gatlinburg ("Defendant") alleging, in part, that Defendant was in breach of a contract for the sale by Plaintiff to Defendant of Plaintiff's chalet rental business.  The case was tried without a jury, and the Trial Court granted Plaintiff a judgment against Defendant for $21,931.35.  Defendant appeals to this Court.  We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.


Ted Mullikin, Gatlinburg, Tennessee, Pro se Appellant.

Boyd W. Venable, III, Sevierville, Tennessee for the Appellee Robert W. Bible d/b/a Chalet Village Chalets.

# OPINION

## Background

Plaintiff and Defendant agreed for Plaintiff to sell to Defendant Plaintiff's chalet rental business. Plaintiff was to keep certain advance deposits on rentals as partial payment of the purchase price and Defendant was to pay the balance of the purchase price later. Defendant took over Plaintiff's chalet rental business on September 1, 2000. In February of 2001, Plaintiff sued Defendant alleging that Defendant had breached the agreement for the sale of the chalet rental business by failing to pay the balance of the purchase price and that as a result of Defendant's breach, Plaintiff was entitled to a judgment in the amount of $21,937.35. The case was tried without a jury in July of 2005.

At trial, Plaintiff testified that he and Defendant had an oral agreement that Defendant would pay Plaintiff $50,000, for the rental contracts, and the names and addresses of the owners of sixteen rental chalets located in Chalet Village in Gatlinburg, along with linens, some laundry equipment, a computer system, and an 800 telephone number. As partial payment, Plaintiff was to keep, and did so, approximately $28,000, of advance deposits on rentals, and Defendant was to pay Plaintiff the balance of the purchase price. Defendant took over the business on September 1, 2000, during the Labor Day weekend. Plaintiff testified that someone from his office delivered the contracts to someone in Defendant's office. Defendant never paid the balance of the purchase price.

While the contracts for the sixteen rental chalets were in effect at the time they were delivered to Defendant, they were non-transferrable. Plaintiff testified: "I gave them to [Defendant] so he'll know the names, addresses, who the people are. And he didn't have a contract and he wanted to see what mine looked like. I gave him all of them, then he's got all the records of everything that took place on those chalets."

Plaintiff testified he was selling the chalet rental business because he was retiring and because the "Tennessee Real Estate Commission was upset because I didn't have a broker,….I did have a broker, yes, but he wasn't there as often as he should have been." When he was running the business, Plaintiff made "40 percent of gross" on the rentals.

Two exhibits were introduced at trial. The first was a letter dated October 11, 2000, from Plaintiff to Defendant that provided, in pertinent part:

> Our agreement for the purchase of the Chalet Business was for $50,000.00 less deposits for the reservations you are handling. The balance was to be paid in 3 equal monthly payments.

The total amount of deposits you are responsible for is $29,862.65 of that amount $1,800.00 is for the $25.00 non refundable service charge which comes off the top and leaves a balance of $28,062.65 you are responsible for.

The difference from the purchase price and net deposits is $21,937.35 you owe me.

A payment of $7,312.45 was due October 1st. Please remit at once….

The second exhibit was a letter dated October 12, 2000, from Defendant to Plaintiff that provided:

Our agreement was for the purchase of 16 units at a price of $3125.00 each, which equals $50,000.00. Also included in the agreement was all office equipment, laundry equipment and linens, value @ +/-$5000.00 And (sic) for the advance deposit liability to come off of the $50,000.00 (sic)

|  |  |
|---|---|
|  | $50,000.00 |
| I only have 10 of the 16 units,     (6 X $3125.00) | -$18,750.00 |
| I didn't receive any equipment or linens | -$5000.00 |
| Advance deposit liability | <u>-$28,062.65</u> |
|  | -$1,812.65 |

Defendant testified that he owns a property management company, Mountain Rentals in Gatlinburg, and that he also owns Coldwell Banker GSM Realty in Gatlinburg. He has been in the rental business in Sevier County since November of 1996.

Defendant testified regarding the parties' agreement stating:

I think the catch word here for everybody is the word "agreement". And I would assume is both sides are satisfied. So think originally it was for 16 units, and if there were - - I don't believe he had contracts. And if there was contracts, and according to his attorney, a minimum of 30 days before it could be ended, which mine is 90 days, so that's the norm. I would have had to contact all 16 owners to get their permission if they were transferable on top of that.

So anyway, I personally went to look up all the 16 units to see if they were up to the standards that I wanted on my program to represent and have vacationers stay in. Between personally viewing all of them and talking to some of the - - all the property owners, whether sending a letter or over the phone, of the six - - and I don't know what the proportion here is - - some were not acceptable standard-wise, and one or two of the owners did not want to rent their house any longer to the public based on their past experience with Chalet Village.

* * *

And we talked about a value for those 16, along with the supplies and equipment, whatever.

But he was kind of under the gun here with the real estate commission coming down on him. He had to close by the end of August. I'd already had plans to go out of town. The holiday weekend was coming up, very busy, one of the busier times, so he didn't have the luxury of time. I could have just said no straight up front and moved on, but he didn't have the luxury of time.

So between me - - we had some talks. Whether you want to say an agreement, I can't say it was a completed agreement until I'm satisfied in viewing these units and accepting them.

Defendant testified that he accepted only ten of the sixteen rental chalets. Defendant further testified that he did not see the equipment before making the agreement to pay $50,000, and that the equipment was not acceptable to him. Defendant did transfer the 800 telephone number into his office. Defendant testified: "I said that there's ten units instead of 16, so that's my version of the agreement." He further stated: "it was my understanding of me being in agreement is me being satisfied with what was being offered, and you can talk numbers up until everything is dealt with. And the time line, I can't sit here and say what happened when exactly." Defendant testified: "I'm amazed we're here because basically I was, from my perspective, doing him a favor, bailing him out of the ten units that I did take."

Defendant admitted that he entered into the agreement with the knowledge that the chalet owners could choose to have someone else manage their property and that it was understood that Defendant would contact the unit owners because he "needed their permission." None of the owners had cancelled their contracts at the time the business was sold to Defendant, but two of the owners chose not to renew their contracts with Defendant after the sale.

Defendant admitted that the advance deposits that Plaintiff kept on all sixteen units, and not just on the ten units Defendant said he had accepted, went toward the purchase price. Some people had paid advance deposits on the six units that Defendant claims he did not accept and Defendant admitted those people never received a refund.

At the conclusion of the trial, the Trial Court entered a Final Judgment granting Plaintiff a judgment of $21,931.35, against Defendant. Defendant appeals to this Court.

**Discussion**

Defendant raises four issues on appeal. However, all four issues can be summed up in one dispositive issue, which is whether the Trial Court erred in finding that the parties had an enforceable oral contract.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

In *Burton v. Warren Farmers Co-op.*, this Court explained:

> Unless required by law, contracts need not be in writing to be enforceable. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989). While oral contracts are enforceable, persons seeking to enforce them must demonstrate (1) that the parties mutually assented to the terms of the contract and (2) that these terms are sufficiently definite to be enforceable. *Davidson v. Holtzman*, 47 S.W.3d 445, 453 (Tenn. Ct. App. 2000); *Castelli v. Lien*, 910 S.W.2d 420, 426-27 (Tenn. Ct. App. 1995). The mutual assent need not be manifested in writing. It may be manifested, in whole or in part, by the parties' spoken words or by their actions or inactions. *Cole-McIntyre-Norfleet Co. v. Holloway*, 141 Tenn. 679, 685, 214 S.W. 817, 818 (1919); Restatement (Second) of Contracts § 19(1) (1979).

*Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002).

The Trial Court found that Plaintiff and Defendant had an enforceable contract for the sale of the chalet rental business, which included the potential to manage sixteen rental chalets along with some equipment, linens, the 800 telephone number, etc., for $50,000. The parties agreed that the advance rental deposits for all sixteen of the chalets were applied toward the purchase price.

The evidence in the record shows, as found by the Trial Court, that Defendant, a real estate professional who had been involved in the rental business for years, and Plaintiff reached an oral agreement for the sale of Plaintiff's chalet rental business to Defendant sight-unseen with the knowledge that any of the chalet owners could choose not to renew their contract. Defendant admitted that some of the advance rental monies that he and Plaintiff agreed would be, and was, applied toward the purchase price of $50,000, for the business were for the six chalet units that Defendant now claims he decided not to accept. Defendant's letter to Plaintiff clearly shows that the "agreement was for the purchase of 16 units … [and] all office equipment, laundry equipment and linens…."

It is clear from the record on appeal that the Trial Court found Plaintiff more credible than Defendant. "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999) (quoting *Collins v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn.1998)).

The evidence does not preponderate against the Trial Court's findings that the parties mutually assented to the terms of the contract and that those terms are sufficiently definite to be enforced. The Trial Court's judgment enforced those terms of the contract. We affirm the Trial Court's July 28, 2005, Final Judgment.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Ted Mullikin.

_____
D. MICHAEL SWINEY, JUDGE