
**FILED**
**Sep 04, 2018**
**08:34 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Linda Brown, | ) | Docket No. 2018-06-0222 |
|     Employee, | ) | |
| v. | ) | |
| Nissan North America, | ) | State File No. 94104-2016 |
|     Employer, | ) | |
| And | ) | |
| Safety Nat'l Cas. Corp., | ) | Judge Kenneth M. Switzer |
|     Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

Linda Brown filed a Request for Expedited Hearing seeking medical and temporary disability benefits, which the Court heard on August 29, 2018.[1] The present focus of this case is whether Ms. Brown suffered an injury arising primarily out of and in the course and scope of her employment with Nissan North America. A medical opinion is necessary to answer this question. Because no medical expert gave that opinion, at this time the Court denies her requests.[2]

### History of Claim

On Friday, December 2, 2016, while assigned to the afternoon shift, Ms. Brown worked on the battery pack assembly line at Nissan loading rear stacks. The task involved repeated overhead pulling. While pulling down a pack, she felt sudden pain on

---

[1] Permanent partial disability benefits is also checked as an issue on the Dispute Certification Notice. This issue will be heard at the final compensation hearing.

[2] Ms. Brown additionally filed a Petition for Benefit Determination (Docket No. 2018-06-0221) regarding alleged injuries to her low back suffered on February 17, 2017. Both parties filed multiple documents using both docket numbers. The Court did not consolidate these cases because they involved different questions of fact and allegations of injuries to different body parts on different days. *See Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 916 (Tenn. 1999). However, for the parties' convenience, the Court heard both cases on the same day. Further, for ease of reference, the Court combined all admissible medical records into one exhibit (Exhibit 2) for both cases.

1

the right side of her neck and shoulder. Ms. Brown did not tell a supervisor about the incident because they were on a "skeleton crew," and no one was available. Since her shift was almost over, Ms. Brown thought the pain would resolve with rest over the weekend.

On Sunday, while eating dinner, Ms. Brown felt sudden numbness in her right side, shoulder and arm. Believing she might be suffering a heart attack or stroke, she went to the Summit Medical Center emergency room. A CT scan of the cervical spine revealed "[s]evere multilevel degenerative changes." The history states:

> Neck pain with right shoulder & arm numbness that keeps recurring, worse while shopping today, became bad yesterday. Works at Nissan, laboring with arms above her head alot [sic]. Has a long history of milder intermittent LEFT sided symptoms, neck to arm: but has not had right side symptoms, nor symptoms this bad.

(Emphasis in original.) Summit providers assigned restrictions and discharged Ms. Brown. At the hearing, Ms. Brown disputed that her sudden numbness occurred while shopping.

The following day, Ms. Brown returned to work and gave the restrictions to her supervisor. Nissan offered a panel. She chose the onsite provider, Premise Health.

At her first visit on December 5, she saw nurse practitioner Carley McCloskey. Ms. McCloskey noted a longer history of neck and right-shoulder pain as well as Ms. Brown's use of over-the-counter medications. Ms. Brown explained at the hearing that she took the medications for aches and pains for conditions including plantar fasciitis and bone spurs.[3] Ms. McCloskey concluded that the injury was "unlikely work-related due to findings on CT."

The next day, Dr. Gilbert Woodall at Premise assessed the cause of Ms. Brown's ailments as "primarily idiopathic." At a follow-up on December 13, Dr. Woodall noted she "obtained CT at ER showing multiple level degenerative changes to account for her current symptoms." Nissan denied the claim based on Dr. Woodall's opinion.

Ms. Brown's pain in her neck and shoulders persisted, so she sought treatment on her own at Tennessee Orthopedic Alliance. At her first visit on March 6, 2017, physician assistant Michael Gaston concluded, "I think the disc degeneration is chronic, but I think

---

[3] On cross-examination, Nissan identified other instances in the medical records where providers noted that Ms. Brown said she experienced pain before the alleged date of injury. With every instance, Ms. Brown gave a similar explanation: she suffered minor aches and pains due to the physical nature of her job. The Court declines to recount every discrepancy between the records and her testimony on this point because she offered plausible explanations.

the radicular pain down the right arm with the numbness did indeed happen due to a work injury and I would classify this as a Work Comp case[.]" He diagnosed degenerative cervical disc, radiculopathy of the cervical region, and impingement syndrome of the right and left shoulders. Ms. Brown underwent several months of conservative care with Mr. Gaston, Dr. Juris Shibyama and Dr. Robert Greenberg. Dr. Greenberg diagnosed osteoarthritis in both shoulders, "left greater than right."

Ms. Brown obtained a second opinion on her shoulders at Vanderbilt. Dr. Jaron Sullivan diagnosed bilateral end-stage shoulder osteoarthritis. She also saw Dr. N. K. Singh, who diagnosed degenerative disc disease, cervical spine and cervical radiculitis. At a September 7 follow-up with Dr. Sullivan, he noted that her shoulder osteoarthritis is "exacerbated by her job."

Ultimately, Ms. Brown came under the unauthorized care of Dr. Margaret MacGregor. The April 6, 2018 notes from her first visit provide a similar history of the December 2, 2016 injury that Ms. Brown offered at trial. Dr. MacGregor noted "work accident, while lifting a heavy object." She concluded that Ms. Brown failed conservative treatment and recommended an anterior cervical decompression and fusion. Dr. MacGregor performed the procedure in April 2018 and listed her final diagnoses as cervical radiculopathy, spondylosis and myelopathy; back and neck pain; and osteoarthritis.

Ms. Brown, who represents herself, sent Dr. MacGregor a letter seeking clarification of her opinion on causation. The letter quotes Tennessee Code Annotated section 50-6-102(14)(A)-(E), the definition of "injury" in the Workers' Compensation Law, but it does not ask questions applying the definition to her condition. Dr. MacGregor checked "yes" after each quoted subsection without elaboration; *see* Ex. 2 at 145-146.

Ms. Brown testified she has been off work receiving short-term and long-term disability benefits. Shortly after her disability benefits began, Nissan terminated her. Ms. Brown continues seeing Dr. MacGregor. She asked the Court to order further treatment with Dr. MacGregor and reimbursement of past out-of-pocket medical bills. Ms. Brown also requested temporary total disability benefits.[4]

Nissan countered that she did not suffer an injury in the course and scope of employment. It questioned whether her need for treatment was due to a preexisting condition, or alternatively occurred while shopping. Nissan also argued that the authorized treating physician, Dr. Woodall, concluded the alleged neck and shoulder

---

[4] Ms. Brown testified that she loved her job at Nissan and wants to return to work once she heals. The Court infers that she additionally sought an order that Nissan reinstate her employment. However, this Court's jurisdiction is limited only to workers' compensation. *See* Tenn. Code Ann. § 50-6-238(a)(3).

injury was not primarily work-related. His opinion is presumed correct, and none of the physicians Ms. Brown saw afterward rebutted the presumption.

**Findings of Fact and Conclusions of Law**

To prevail at an expedited hearing, Ms. Brown must provide sufficient evidence to show she would likely prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017).

Resolution of the present issue turns on whether Ms. Brown suffered an injury as defined in the statute. The Workers' Compensation Law defines an injury as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and [be] identifiable by time and place of occurrence[.]" *See* Tenn. Code Ann. § 50-6-102(14). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Hosford v. Red Rover Preschool,* 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *19-20 (Oct. 2, 2014). The "course of employment" requirement focuses on the time, place, and circumstances of the injury. *Id.* at 20. In contrast, an injury "arises out of employment" when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.*

Here, Nissan argued that Ms. Brown did not suffer an injury arising out of and in the course and scope of her employment. It relied on the Summit notes that state the injury occurred "while shopping" and other references in the records stating her onset of pain was months before the alleged date of injury. Nissan further pointed out that Ms. Brown did not report an injury on December 2.

The Court is unpersuaded. Ms. Brown testified she felt the sudden onset of pain in her neck and right shoulder on December 2 while pulling down on a battery pack near the completion of her afternoon shift. The Court observed Ms. Brown's demeanor and finds her credible. She appeared calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest, which are indicia of witness credibility. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Moreover, Ms. Brown never wavered in her description of the mechanism of injury even under rigorous cross-examination.

Ms. Brown offered sufficient detail regarding how she suffered injury as well as the date and approximate time. Further, her testimony mirrors the history of injury she gave to Dr. MacGregor. She adequately described an injury caused by heavy overhead pulling while operating Nissan's machinery. As noted previously, the Court finds it entirely plausible that Ms. Brown suffered minor aches and pains before December 2, given the physicality of her job. Moreover, the Court accepts her testimony that she did

4

not tell providers at Summit that she went shopping on December 3. Likewise, Ms. Brown offered a satisfactory explanation for waiting to report the injury. She worked a "skeleton crew," and her workday was nearly over. Thus, the Court holds Ms. Brown is likely to prevail at a hearing on the merits that she suffered an injury arising in the course and scope of her employment.

This does not end the analysis. The Workers' Compensation Law also requires that, for the Court to find Ms. Brown suffered a compensable injury, she must also show "to a reasonable degree of medical certainty that [the employment] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes," and that, "in the opinion of the physician, it is more likely than not, considering all causes, as opposed to speculation or possibility." Further, the opinion of the treating physician selected from a panel "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." *See* Tenn. Code Ann. § 50-6-102(14)(C)-(E).

Applying these standards, Nissan argued that the authorized treating physician, Dr. Woodall, concluded that Ms. Brown's injury is not work-related. Specifically, he characterized her neck pain as "primarily idiopathic" and noted the CT scan showed "multiple level degenerative changes to account for her current symptoms." Dr. Woodall's opinion is unambiguous. While he did not use the precise wording of the statutory definition of a compensable injury to conclude that Ms. Brown's neck injury was not primarily work-related, he does not need to do so. *See Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *13-15 (May 15, 2017) (a physician may gave an opinion that meets the legal standard provided in section 50-6-102(14) without stating the opinion in a "rigid recitation of the statutory definition.").

In contrast, none of the unauthorized providers offered causation opinions that satisfy the legal standard set forth in Tennessee Code Annotated section 50-6-102(14). Physician assistant Michael Gaston concluded that Ms. Brown's "radicular pain down the right arm with the numbness did indeed happen due to a work injury and I would classify this as a Work Comp case[.]" However, a physician assistant is not qualified to offer an opinion on causation. *See Dorsey v. Amazon.com, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 13, *9-10 (May 14, 2015) ("The opinion of the nurse practitioner . . . did not and could not provide a valid basis for denial of the claim based on causation."). Further, the Court acknowledges that Dr. MacGregor wrote an initial evaluation that Ms. Brown suffered a "work accident, while lifting heavy object." This notation is not clearly a statement of opinion. Dr. MacGregor's responses to Ms. Brown's causation letter imply that she might think the injury is work-related. This, however, is speculation.

At this time, the Court finds that Dr. MacGregor's notes and answers to questions in a letter do not rebut the presumption of correctness the statute affords to Dr. Woodall's opinion. Therefore, Ms. Brown has not presented sufficient evidence from which this

5

Court may conclude that she is likely to prevail at a hearing on the merits. In light of this conclusion, the Court need not address the request for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies the requested relief at this time.

2. This matter is set for a Scheduling Hearing on **November 5, 2018, at 2:15 p.m. Central.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

**ENTERED September 4, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:
1. Affidavit of Linda Brown
2. Composite medical records
3. First Report of Injury
4. Choice of Physician form
5. Wage statement
6. Notice of Denial
7. Affidavit of Sheila Taylor

Technical record:
1. Petition for Benefit Determination
2. Employer's Pre-Mediation Statement
3. Dispute Certification Notice (with employer's additional issues)
4. Request for Expedited Hearing
5. Employer's Response to Request for Expedited Hearing
6. Employer's Motion to Quash

**CERTIFICATE OF SERVICE**

I certify that a copy of the Expedited Hearing Order was sent to these recipients by the following methods of service on September 4, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Linda Brown, Employee | x | | | 6441 Paddington Way Antioch TN 37013 |
| Stephen Morton, Employer's Attorney | | | x | Stephen.morton@mgclaw.com; Amber.dennis@mgclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

  If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20___.

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation
220 French Landing Drive, I-B
Nashville, TN 37243-1002
800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $_____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | | |
|---|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

Amount Owed            To Whom

_____        _____

_____        _____

_____        _____

_____        _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____